### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW HAMPSHIRE

In re:                                                CHAPTER 11

**CHERB, LLC**                              Case No. 13-11635-BAH

          Debtor

### DEBTOR'S AND HARDMAN'S MOTION FOR ORDER
### AUTHORIZING PRIVATE SALE OF GRANITE TOWN PLAZA
### FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS AND ASSUMPTION
### AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS

The Debtor in Possession, Cherb, LLC (the "Debtor") respectfully moves this Court as follows:

### INTRODUCTION AND REQUESTED RELIEF

1.      Pursuant to Code Sections 105 and 363, F.R.B.P. 2002, 6004, 9013 and 9014 and Local Bankruptcy Rule 6004-1 and as contemplated by the Proponents' Second Amended Plan of Reorganization Dated September 5, 2014 filed by the Herbert Hardman, Cheryl Hardman and the Debtor [*Doc. No. 298*], the Debtor requests this Court to approve the sale of the portions of the premises commonly known as "Granite Town Plaza" owned by the Moving Parties (the "Granite Plaza") and the unexpired non-residential leases thereof (individually, the "Leases" and, collectively with the Granite Plaza, the "Purchased Assets") to Christopher Alexandrou, as Trustee of 1-9 Pauline Street Realty Trust and Oceanview Realty Trust (the "Buyer") for the sum of $4,850,000 (the "Price") free and clear of all liens, claims and other interests to the maximum

1

extent permitted by law pursuant to the Purchase and Sale Agreement attached hereto as Exhibit A (the "Agreement") and the order granting this Motion (the "Sale Order" and the "Sale Motion"). Except as otherwise expressly defined herein, all of the words, terms and phrases defined in the Agreement shall have and be given the same meaning when used herein.

2.      The entry of the proposed Sale Order accompanying this Motion (the "Order") will, among other things:

    a.      Approve the Agreement.

    b.      Authorize the Debtor to assume and assign the Leases of Granite Plaza to the Buyer as part of the Sale.

    c.      Authorize the Debtor to grant, assign and transfer the Purchased Assets to the Buyer by Fiduciary Deed pursuant to the Agreement, Section 363 of the Code and the Sale Order free and clear of all liens, claims and interests to the maximum extent permitted by law, without further advertising beyond that already done by the Broker and Co-broker, Colliers International, Inc. and Prolman Realty, Inc. retained with the approval of this Court (individually, "Colliers" and "Prolman Realty" and collectively, the "Brokers") or competitive bidding, simultaneously with the payment of the Price.

    d.      Determine that under the circumstances the Price (**1**) represents the fair market value of the Purchased Assets and (**2**) exceeds the lowest price that would be paid for the Purchased Assets by an arms-length purchaser in a negotiated transaction.

**2**

     **e.**      Determine that there are no defaults by the Debtor or the Hardmans under the terms of the Leases.

     **f.**      Relieve the Debtor from the requirements of L.B.R. 6004-1(b).

     **g.**      Authorize the Debtor to do, or cause to be done, execute or cause to be executed and take or cause to be taken each and every act, action or document required by the Agreement or which the Debtor in the exercise of reasonable business judgment determines to be reasonably necessary to close the Sale.

     **h.**      Determine that the Buyer is a good faith purchaser of the Purchased Assets and is entitled to, and shall have the benefit of Code Section 363(m).

     **i.**      Make the Sale Order effective on entry as permitted by F.R.B.P. 6004(h).

   **3.**      No previous request has been made for the relief sought herein.

   **4.**      This Motion is related to the Proponents' Second Amended Disclosure Statement dated September 5, 2014 Pertaining to Plan of Reorganization of Even Date and Proponents' Second Amended Plan of Reorganization Dated September 5, 2014, which contemplate the Sale and the Adversary Proceeding captioned *Rockland Trust Company v. Cherb, LLC, Adv. Pro. No. 13-1134-BAH* (the "Rockland Adversary Proceeding").

## PARTIES, JURISDICTION AND VENUE

   **1.**      The Debtor is the debtor in possession in this Case and a co-owner of the Purchased Assets, which is property of the estate within the meaning of Code Section 541.

2.      The Debtor and the Hardmans purchased and operated the Granite Plaza for profit and are co-owners of the Granite Plaza within the meaning of Code Section 363.

3.      Milford, New Hampshire holds a real estate tax lien on the Granite Plaza.

4.      Merrimack County Savings Bank holds a first priority lien on Units 1, 2, 4 and 7 and the other Purchased Assets ("Merrimack" and the "Merrimack Lien").

5.      Citizens Bank holds a lien on Units 5 and 6, which are the "Pad" and the building leased from the Hardmans that it occupies and uses a branch bank ("Citizens" and the "Citizens Lien").

6.      Rockland Trust Company holds an attachment lien on the portion of the Granite Plaza owned by the Hardmans, as security for any final judgment rendered against them in Rockland Trust Company v. CHERB, LLC, Herbert S. Hardman and Cheryl T. Hardman, etal., Hillsborough Superior Court, Northern District, Docket No. 216-2013-CV-00324 (the "State Action").

7.      This Court has jurisdiction to entertain this Motion pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      This Court may grant the Debtor the relief requested herein pursuant to 11 U.S.C. §§ 105, 363, 365 and F.R.B.P. 2002, 6004 and 6006.

## NOTICE OF INTENDED SALE AND HEARING ON SALE MOTION

9.      Simultaneously with filing this Motion, the Debtor served the Notice of Intended Sale of Property of the Estate (the "Sale Notice") attached as Exhibit B and Notice of Hearing

**4**

and Objection Dates (the "Hearing Notice") on the United States Trustee, the Internal Revenue Service, Milford, Merrimack, Rockland and all other creditors and parties in interest entitled to notice under Code Section 363 and Bankruptcy Rules 6004 and 2002.

## MOTION TO LIMIT NOTICE AND SHORTEN NOTICE AND EXPEDITE HEARING

10.     Immediately after filing this Motion, the Debtor and the Hardmans will file a motion asking this Court to limit and shorten notice of the Sale Hearing and expedite the Sale Hearing due to the need to close the Sale before the period of time within which the Buyer may complete the Buyer's like-kind exchange expires on January 13, 2015.

## RELEVANT PROCEDURAL HISTORY

11.     On June 26, 2013, the Debtor commenced this Case by filing its Voluntary Petition (the "Petition Date" and "Voluntary Petition").  An order for relief was entered on the same date.

12.     On July 19, 2013, the Debtor filed its Statement of Financial Affairs ("SoFA") and Schedules A-H (collectively, the "Schedules").

13.     On December 13, 2013, the Debtor amended its SOFA and Schedules B, D, E, G and H.

14.     No Official Committee of Unsecured Creditors has been appointed in this Case.

15.     At the beginning of this Case, this Court granted the Debtor permission to use cash collateral on an emergency basis.

16.     On January 10, 2014, the Debtor filed its initial Disclosure Statement Pertaining to Plan of Reorganization dated January 10, 2014 and Plan of Reorganization  [Docs. 134 and 135].  The Proponents' Second Amended Disclosure Statement dated September 5, 2014 Pertaining to Plan of Reorganization of Even Date and Proponents' Second Amended Plan of Reorganization Dated September 5, 2014 (the "Disclosure Statement" and the "Plan") proposed by the Debtor and the Hardmans and served on all creditors and other parties in interest contemplate and discuss the potential sale of Granite Plaza and the distribution of the net proceeds of the Sale.  On January 12, 2015, this Court may consider the adequacy of the Disclosure Statement.

## BASIS FOR REQUESTED RELIEF

### Code Section 363 Permits this Court to Grant the Requested Relief.

17.     "[A]fter notice and hearing," a debtor in possession "may use, sell, or lease, other than in the ordinary course of business, property of the estate." Code, § 363(b)(1).  The power to authorize a sale or transaction under Code Section 363 is discretionary.  *See, e.g., In re WPRY-TV, Inc.,* 983 F.2d 336, 340 (1st Cir. 1993).  A sale may be public or private.  A bankruptcy court may authorize a debtor to grant and convey property of the estate free and clear of all liens, claims and interests with the consent of creditors holding liens on the property to be sold or the Sale satisfies any of the other conditions set forth in Code Section 363(f) and (b).  If the bankruptcy court determines that the buyer purchased the property of the estate in good faith, the reversal or modification of the order approving the sale on appeal will not affect the validity of the sale.  Code, § 363(m).

6

**The Purchased Assets, Value and Encumbrances.**

18.    The Debtor is and has been for many years engaged in the business of buying, owning, leasing and selling, real estate (the "Business").

19.    The Granite Plaza is neighborhood shopping center consisting of 109,069 square feet of retail space located Milford.  The Debtor and the Hardmans own Units 1, 2, 4, 5, 6 and 7 (the "Debtor and Hardman Units" and/or "Granite Plaza Units").  Mark Prolman, a Broker owns Unit 3 (the "Prolman Unit"), which is being sold to the Buyer as part of the transaction that includes the Sale (the "Prolman Sale" and, collectively with the Sale, the "Transaction").  As used in this Motion, the term "Granite Plaza" does not include the Prolman Unit although the Unit is part of the transaction that includes the sale of Granite Plaza and the Prolman Unit.

20.    The Debtor and the Hardmans have operated Granite Plaza as a single, profit center or division for profit together since acquiring the Debtor and Hardman Units.  Costs and expenses have been shared based on the square footage owned by each of them.  Among other things, the Moving Parties borrowed $2,050,000 from Merrimack (the "Merrimack Loan"), signed a promissory note as joint and several obligors and mortgaged and collaterally assigned their interests in the Granite Plaza and the Leases to Merrimack as security for the payment of the note.

21.     The following tenants or Counterparties occupy portions of Granite Plaza pursuant to written Leases (the "Lease Counterparties"):  Better Business Better Foods, Citizens Bank, Evergreen Hospitality, Granite Wash-N-Dry, Heidi's Hallmark, Jake's

Discount, Karl's Associates, Milford Fitness (Gold's Gym), Rent-A-Center, fka Rent To Own, and Tractor Supply Company.

22.    Colliers is a licensed real estate broker that specializes in the marketing and sale of commercial real estate.  It has marketed Granite Plaza formally and informally since being retained by the Debtor and the Hardmans with the approval of this Court on or about June 16, 2014.  The Buyer offered only $3,850,000 early in the marketing process.  The $4,850,000 Price offered by the Buyer exceeds the Buyer's initial offer by $1,000,000 and all other purchase prices suggested by other potential purchasers during the marketing process.  The Buyer made the only written offer for Granite Plaza.  In the opinion of Colliers, the Price approximates the fair market value of Granite Plaza in a tax-benefitted Sale and probably exceeds the fair market value of Granite Plaza in a conventional transaction.  In the opinion of Colliers and the Moving Parties, the Price is unquestionably within the range of high and low values that could reasonably be attached to the Purchased Assets.  Ex. C, *Scanlon Declaration*.

23.    Prolman Realty concurs in the opinions expressed by Colliers.  Ex. D, *Prolman Declaration*.

24.    The Moving Parties are intimately familiar with Granite Plaza, including its tenants, the rent paid by tenants, the costs and expenses incurred in operating the property and its physical condition. It has also conferred with the Broker regarding the value of Granite Plaza before and during the negotiations that led to Agreement.  The Debtor valued its interest in Granite Plaza at $1,000,000 based believing mistakenly that it owns 53.4% of the square footage.  It will receive 51% of the Price or approximately $2,473,500.  Although the Debtor

believes that the fair market value of Granite Plaza is closer to the $5,500,000 listing price (the "Listing Price") than the Price, the Moving Parties in the exercise of their business judgment decided to enter into the Agreement because the Price approximates the fair market value of the property in the opinion of the Brokers and the proceeds will be sufficient to confirm the Plan. *Ex. C. Hardman Declaration*.

25.    Based on the Declarations, (**a**) the Price to be paid by the Buyer is reasonably equivalent to the fair market value of the Units owned by the Moving Parties and exceeds the lowest price included in the range of fair market values that might reasonably be attributed to the Purchased Assets, (**b**) the Price has been fairly allocated between the Debtor and the Hardmans and (**c**) the total consideration to be paid for the Prolman Unit and Granite Plaza has been fairly allocated between Mr. Prolman and the Moving Parties.

### The Purchased Assets Does Not Constitute All or Substantially All of the Property of the Estate.

26.    In Schedule A to the Petition, the Debtor listed and valued all of its Real Properties.  The Debtor valued all of its Real Properties at $3,950,000 on a current value basis, including the $1,000,000 attributed to the Purchased Assets and the $1,000,000 attributed to Carriage Depot sold with the approval of this Court.  The Debtor will still own real estate valued at $1,950,000 following the Sale.  Mathematically, the Purchased Assets represent approximately 33.3% of the gross value of the property of the estate, as reported in Schedule A.

27.    A functional definition of "a sale of substantially all of the property of the estate" might be a sale that prevents the filing and confirmation of a plan of reorganization for the debtor or is a *sub rosa* plan of reorganization.

**9**

28.    The Debtor has filed its Second Amended Disclosure Statement and Second Amended Plan.  The closing of the Sale is the next step in the reorganization of the Debtor.  If possible from a timing perspective, the Debtor will sell the Purchased Assets pursuant to the Amended Plan.

29.    Whether this Court applies a mathematical or functional test, it should conclude that the Sale is not a sale of substantially all of the property of the estate.  In Debtor's business judgment, the Purchased Assets does not constitute all or substantially all of the property of the estate.

**The Buyer Is Not an Insider with Respect to the Debtor.**

30.    No familial or business relationship exists between the Buyer and the Debtor and/or the Hardmans.  Although the definition of insider given in Code Section 101 is broad and flexible, the Moving Parties are not aware of any fact that would support a finding or even an allegation that the Buyer is an insider with respect to the Debtor and/or the Hardmans.

**The Agreement Is a Fair, Arms-Length Agreement.**

31.    The Agreement resulted from good faith, arms-length negotiations between the Buyer and the Debtor and the Hardmans.  Attorney Brian Barrett represented the Buyer.  The Hardmans were represented by Attorney Mark Fernald and Colliers.  Except for the Broker and Co-broker, no other real estate broker was involved in the Sale.

32.    In the opinion of the Debtor, Colliers and Prolman Realty, the Agreement and the business terms thereof are fair, reasonable and consistent with agreements executed by

knowledgeable parties in similar New Hampshire real estate transaction.  The financing contingency has been satisfied according to the Brokers.  Except for obtaining the approval of this Court, all of the other conditions precedent have been satisfied

### The Sale Furthers the Debtor's Reorganization and Is In the Best Interests of Creditors.

33.    Closing the Sale is consistent with the Disclosure Statement and Plan, which have been served on all creditors and other parties in interest.  The Disclosure Statement included a sale of Granite Plaza as one of the funding mechanisms for the implementation of the Plan, the use of the proceeds of a sale (the "Proceeds") and the relationship of a sale to the payment of the claims held by unsecured creditors.  In this instance, the Sale is simply the next step in the reorganization process.

34.    The Sale is in the best interests of the Debtor's creditors.  The proceeds will satisfy the secured claim held by Milford, which is accruing interest at the rate of 18% per annum.  It will also satisfy the claim secured by the first priority lien on Granite Plaza held by Merrimack and the claim secured by the Citizens Lien.  As contemplated by the Plan, the Debtor will pay Rockland approximately $200,000 from the proceeds leaving Rockland with loan to value ratio of approximately 66%, a percentage well within Rockland's lending guidelines.  As shown by the Disclosure Statement and Plan, the Real Properties to be retained by the Debtor subject to the reduced Rockland lien will generate positive cash flow that will fund the Plan that will be available and used to pay Rockland and other creditors holding allowed claims in full.

**Proposed Private Sale Permissible**

35.     Code Sections 363(b) and 1107 authorize a debtor in possession "after notice and a hearing, [to] use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l).

36.     The authority to sell assets conferred upon a debtor in possession by Code Section 363(b) "include[s] a sale of all or substantially all the assets of an estate" (a "363 Sale").  *In re Coastal Cable T.V., Inc*., 24 B.R. 609 (1st Cir. B.A.P. 1982); *In re CadKey, Inc.*, 317 B.R. 19 (D. Mass. 2004); *In re Envisionet Computer Services, Inc.*, 275 B.R. 664 (D. Me. 2002); *see also, Otto Preminger Films. Ltd. v. Ointex Entertainment, Inc. (In re Ointex Entertainment. Inc.)*, 950 F.2d 1492, 1495 (9th Cir. 1991); *In re Haven Eldercare, LLC,* 2008 WL 2690729 (Bankr. D. Conn.) (collecting cases).

37.     A 363 Sale may be public or private.  F.R.B.P. 6004(f)(1).

38.     A bankruptcy court's power to authorize a sale under Section 363(b) is to be exercised in the court's discretion.  *See, e.g., In re WPRY-TV, Inc.,* 983 F.2d 336, 340 (1st Cir. 1993).

**Sale Approvable Even Under Stricter All Asset Sale Test.**

39.     Even if the Sale is a sale of all or substantially all of the property of the estate, courts have approved such sales where they serve a sound business purpose.  The "sound business purpose" test requires a court to consider the following factors: (**a**) the proportionate value of the assets to be sold to the value of the estate as a whole; (**b**) the amount of elapsed time

since the filing; (**c**) the likelihood that a plan of reorganization will be proposed and confirmed in the near future; (**d**) the effect of the proposed disposition on future plans of reorganization; (**e**) the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property; (**f**) which of the alternatives of use, sale or lease the proposed transaction envisions; and (**g**) whether the asset is increasing or decreasing in value. *Id.* at 322 (*citing Lionel*, 722 F .2d at 1071).

40.     The Sale passes the sound business test.  The Purchased Assets constitute approximately 33% of the value of the Debtor's property as reported in Schedule A to the Petition.  The Debtor has filed and served on all creditors and other parties in interest the Disclosure Statement and Plan which contemplates reorganization based on the Sale.  The Sale is consistent with the Disclosure Statement and Plan and makes the confirmation of the Plan more probable than not.  The disposition makes the confirmation of the Plan more likely because of the significant reduction of the Rockland claims.  The Price exceeds the value attributed to the Purchased Assets in Schedule A.  In the Debtor's opinion and that of the Brokers, the Purchased Assets will not increase significantly in value in the near term.

41.     *General Motors* added the following additional considerations (the "GM Factors"): (**a**) whether the estate has the liquidity to survive until confirmation of a plan; (**b**) whether the Sale opportunity will still exist as of the time of plan confirmation; (**c**) if not, whether it is likely that there will be a satisfactory alternative Sale opportunity, or a stand-alone plan alternative that is equally desirable (or better) for creditors; and (**d**) whether there is a material risk that by deferring a Sale, the "patient will die on the operating table." *Id.*

42.  Although the Debtor has sufficient liquidity to survive until confirmation of the Plan, the GM Factors are satisfied in this Case.  The Sale opportunity will not exist after January 13, 2015 because it will no longer permit the Buyer to take advantage of the like-kind exchange, tax deferral.  There will not likely be an alternative sale opportunity equally valuable to the creditors and other parties in interest.  Since the Sale is contemplated by, and will implement the Plan, the Sale meets the most important of the GM Factors – what is in the best interests of the creditors, equity holders and other parties in interest and that the Debtor is not trying to circumvent the confirmation process.

43.  Consideration of the non-exclusive factors cited by bankruptcy courts supports the conclusion that there is an articulated business justification and a good business reason for the Sale.  *Boston Generating*, 440 B.R. at 322. *See also, In re GSC, Inc.*, 2011 WL 2845180 (Bankr. S.D.N.Y.). *See also, In re CGE Shattuck, LLC*, 254 B.R. 5, 12 (Bankr. D.N.H. 2000) (adopting *Lionel* analysis; noting that the "degree of court scrutiny of proposed transactions under §363 must be elastic -- becoming more strict and searching the nearer the transaction goes to the heart of the reorganization plan process").  Courts have also required that the sale price be fair and reasonable and that the Sale be the result of good faith negotiations.  *See, e.g., In re Abbotts Dairies of Pa.*, 788 F.2d 143, 147-50 (3d Cir. 1986).  The Sale represents the culmination of a great deal of effort that increased the Price by $1,000,000 and is entirely consistent with Code Section 363, F.R.B.P. 6004 and the guidelines set forth in applicable case law.  Since the Debtor, in the exercise of its business judgment, determined the Agreement and

the Price to be paid by the Buyer to be fair and reasonable under the circumstances, these requirements have been satisfied in this Case.

44.     In this Case, the Sale will not occur outside of the normal confirmation process and without the functional equivalent of a disclosure statement.  The Debtor has filed its Disclosure Statement and Plan.  It will ask this Court to continue the hearing on the adequacy of the Disclosure Statement and re-schedule the hearing as a combined hearing on the adequacy of the Disclosure Statement and confirmation of the Plan for the same date as the Sale Hearing. Whether this Court will grant the motion, the Sale should be approved by this Court.

**Sale Free of Liens, Encumbrances, Claims and Other Interests.**

45.     Debtor requests authorization to sell the Purchased Assets free and clear of liens, claims and encumbrances and other interests.

46.     Section 363(f) of the Bankruptcy Code authorizes a debtor in possession to sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied:

     **a.**     Applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

     **b.**     Such entity consents;

     **c.**     Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

     **d.**     Such interest is in bona fide dispute; or

    **e.**  Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see also, In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (section 363(f) is written in the disjunctive; a court may approve a sale "free and clear" provided at least one of the subsections is met).

  **47.**  The only persons and entities that hold an interest in the Purchased Assets are Milford, Merrimack, Citizens, Rockland and the tenants. The Debtor has given the tenants notice of this Motion and the Sale.  Neither the Debtor nor the Hardmans are in default under the terms of the Leases.

  **48.**  Merrimack has already advised the Moving Parties that it supports and will consent to the Sale because its secured claim will be paid in full from the proceeds of the Sale.

  **49.**  The Debtor expects Citizens and the tenants to consent to the Sale because its secured claim will be paid in full from the proceeds of the Sale and their leases will be assumed.

  **50.**  With respect to Rockland, the Debtor expects to be able to satisfy the provisions of Code Section 363(f)(a), (c) and (d).  The attachment of Granite Plaza held by Rockland constitutes additional security for the payment of any judgment rendered against the Hardmans in the State Action.  The Plan provides for the payment of the Rockland secured claim in full, with interest, over time.  No final judgment has been entered in that State Action.  Rockland will retain its lien on the Debtor's properties, which it claims are equal in value to the remaining debt, and the so-called Merrimack Commons Shopping Center owned by the Hardmans giving it an equity cushion.  Further, a bona fide dispute exists between Rockland and the Moving Parties

regarding the amount due Rockland.

51.     Junior lienholders may be compelled to accept money in a variety of state court procedures.  *Boston Generating*, 440 B.R. at 333.  Other courts considering this issue have also held that the "cramdown" provision under the Bankruptcy Code constitutes a "legal or equitable proceeding" and permits a Sale under section 363(f)(5). *See e.g., Grand Slam*, 178 B.R. at 464; *Scherer v. Fed. Nat. Mortgage Ass'n (In re Terrace Chalet Apartments, Ltd.)*, 159 B.R. 821, 829 (N.D. Ill. 1993); *In re Healthco Int'l, Inc.*, 174 B.R. 174, 176-77 (Bankr. D. Mass. 1994).

52.     Except for payments made pursuant to the Sale Order, all liens on the Purchased Assets will attach to the proceeds received from the Sale of those assets with the same force, effect and priority as such liens have existed prior to the Petition Date, subject to the rights and defenses, if any, of Debtor or any party in interest.

**CONCLUSION**

53.     Based upon all of the foregoing, Debtor request that this Court enter the proposed Sale Order and grant Debtor such further relief as may be equitable, fair and lawful.

                                        Respectfully submitted,

                                        /s/  Diane M. Puckhaber, Esq.
Dated:   January 6, 2015                Diane M. Puckhaber, Esq. [BNH 01369]

                                        Attorney for:  CHERB, LLC

                                        Puckhaber Law Offices, PLLC
                                        PO Box 2693
                                        Concord, NH 03302-2693
                                        (603) 224-3322

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served the foregoing pleading on each person named below by causing it to be filed electronically via the CM/ECF filing system or mailed by first-class United States Mail, postage pre-paid, or in such other manner as may be indicated:

All Persons on the attached Service Lists.

/s/  Diane M. Puckhaber, Esq.

Dated:  January 6, 2015        Diane M. Puckhaber, Esq. [BNH 01369]

## APPEARANCES SERVICE LIST
### In Re: Cherb, LLC, Chapter 11, Case No. 13-11635-BAH

Alexander S. Buchanan on behalf of Creditor Bluestone Capital, LLC
alec@attorneybuchanan.com, laura@attorneybuchanan.com

David E. Buckley on behalf of Creditor Brookline Savings Bank
dbuckley@buckleylawoffices.com,
courts@buckleylawoffices.com;buckleylawoffices@gmail.com;dcelli@buckleylawoffices.com

Christopher M. Dube on behalf of Creditor Rockland Trust
christopher.dube@mclane.com, bankruptcy@mclane.com

Steven J. Dutton on behalf of Counter-Defendant Rockland Trust Company
steven.dutton@mclane.com, bankruptcy@mclane.com

Steven J. Dutton on behalf of Creditor Rockland Trust
steven.dutton@mclane.com, bankruptcy@mclane.com

Steven J. Dutton on behalf of Creditor Rockland Trust Company
steven.dutton@mclane.com, bankruptcy@mclane.com

Steven J. Dutton on behalf of Plaintiff Rockland Trust Company
steven.dutton@mclane.com, bankruptcy@mclane.com

Geraldine Karonis on behalf of U.S. Trustee Office of the U.S. Trustee
Geraldine.L.Karonis@usdoj.gov

Office of the U.S. Trustee
USTPRegion01.MR.ECF@usdoj.gov

Kirk P. Rothemich on behalf of Creditor Brookline Savings Bank
rothemichlaw@aol.com

Mark C. Rouvalis on behalf of Counter-Defendant Rockland Trust Company
mark.rouvalis@mclane.com, bankruptcy@mclane.com;maryjo.herman@mclane.com

18

```
Mark C. Rouvalis on behalf of Creditor Rockland Trust
mark.rouvalis@mclane.com, bankruptcy@mclane.com;maryjo.herman@mclane.com

Mark C. Rouvalis on behalf of Creditor Rockland Trust Company
mark.rouvalis@mclane.com, bankruptcy@mclane.com;maryjo.herman@mclane.com

Mark C. Rouvalis on behalf of Plaintiff Rockland Trust Company
mark.rouvalis@mclane.com, bankruptcy@mclane.com;maryjo.herman@mclane.com

UST on behalf of U.S. Trustee Office of the U.S. Trustee
USTPRegion01.MR.ECF@usdoj.gov, Geraldine.L.Karonis@usdoj.gov

Jack S. White on behalf of Creditor Merrimack County Savings Bank
bankruptcy@lawyersnh.com

Michael McCormack, Asst. U.S. Attorney on behalf of IRS
michael.mccormack2@usdoj.gov
```

EMC Insurance Companies
200 Crossings Blvd, Suite 300
PO Box 7911
Warwick, RI 02887-6211

Mark D. Fernald, Esq.
Brighton, Fernald, et al
PO Box 270
Peterborough, NH 03458

Fernald, Taft, Falby & Little, P.A.
14 Grove Street
PO Box 270
Peterborough, NH 03458

Prolman Realty, Inc.
100 Elm Street
Nashua, NH 03060

Internal Revenue Service
Special Procedures Function
80 Daniel
PO Box 9502
Portsmouth  NH  03802

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia PA 19101-7346

State of New Hampshire
Dept. of Employment Security
Attn: Arnold Rocklin-Weare
32 South Main Street
Concord, NH 03301

## FULL CREDITOR SERVICE LIST
### In Re: Cherb, LLC, Chapter 11, Case No. 13-11635-BAH

**A&E Custom Coffee Roastery, LLC**
135 Route 101A #7
Amherst, NH 03031

**American Security & Fire Protection**
PO Box 1003
Amherst, NH 03031

**Anjoli, LLC**
c/o Jonanna Gendron
19A Ox Brook Woods Road
Milford, NH 03055

**ASR Roofing**
301 Newbury Street, #123
Danvers, MA 01923

**Barlo Signs**
158 Greeley Street
Hudson, NH 03051

**BioTech Pest Control, Inc.**
22 Windmere Dr.
Raymond, NH 03077

**Bluestone Capital, LLC**
3 Bessom St., #151
Marblehead, MA 01945-2371

**Brookline Bank**
131 Clarendon Street
Boston, MA 02117

**Brookline Savings Bank**
Attn: Chris Williams
PO Box 470469
Brookline Village, MA 02447

**Cheryl Hardman**
POB 227
Milford, NH 03055

**Connecticut Underwriters Inc.**
PO Box 2784
Middletown, CT 06457

**Eastern MacDuffie**
PO Box 38
Hudson, NH 03051

**Eastern Propane & Oil**
POB 1800
Rochester, NH 03866

**Electrical Supply of Milford**
318 South Street - Route 13
Milford, NH 03055

**EMC Insurance Companies**
PO Box 219225
Kansas City, MO 64121-9225

**Environmental Protection Division**
PO Box 4600
Manchester, NH 03108-4600

**Fairpoint Communications**
PO Box 11021
Lewiston, ME  04243

**Fernald, Taft, Falby & Little**
PO Box 270
Peterborough, NH 03458

**Gold's Gym**
191 Elm Street
Milford, NH 03055

**Herbert Hardman**
POB 227
Milford, NH 03055

**IRS**
Special Procedures
80 Daniel St., PO Box 9502
Portsmouth, NH 03802

**IRS**
POB 7346
Philadelphia, PA 19101-7346

**John Turner**
20 Grove Street
Peterborough, NH 03458

**Liberty Utilities**
PO Box 11735
Newark, NJ 07101-4735

**Manchester Water Works**
PO Box 9677
Manchester, NH 03108-9677

**Manchester Water Works**
281 Lincoln Street
Manchester, NH 03103

**MD's Trash Removal**
PO Box 155
Milford, NH 03055

**Merrimack County Savings Bank**
PO Box 2826
Concord, NH 03302-2826

**MetLife Auto & Home**
PO Box 41753
Philadelphia, PA 19101-1753

**Prime Roofing Corp.**
PO Box 478
New Ipswich, NH 03071

**Prolman Realty**
100 Elm Street
Nashua, NH 03060

**PSNH**
POB 330
Manchester, NH 03105

**Public Service of NH**
PO Box 650047
Dallas, TX  75265-0047

**Rockland Trust**
399 Highland Avenue
Somerville, MA 02144

**Rockland Trust**
Christopher M. Dube, Esq.
Mclane, Graf, Raulerson et al
PO Box 326
Manchester, NH 03101

**Secondwind Water Systems**
735 E Industrial Park Dr.
Manchester, NH 03109

**State of New Hampshire**
Dept. of Employment Security
Attn: Arnold Rocklin-Weare
32 South Main Street
Concord, NH 03301

**The Cincinnati Insurance Group**
PO Box 145496
Cincinnati, OH 45250-5496

**The Hardman Companies**
POB 227
Milford, NH 03055

**Town of Amherst Tax Collector**
PO Box 960
Amherst, NH 03031

**Town of Milford Water Utilities**
1 Union Square
Milford, NH 03055

**Town of Milford, NH**
Tax Collector
1 Union Square
Milford, NH 03055

**Tractor Supply**
191 Elm Street
Milford, NH 03055

**U.S. Securities and Exchange Commission**
Northeast Regional Office
233 Broadway
New York, NY 10279

**Wage and Hour Administrator**
NH Department of Labor
PO Box 2076
Concord, NH 03302-2076